Katherine M. RUCKER, Respondent,

v.

Steven B. SCHMIDT, Appellant,

Rider Bennett, LLP, Appellant.

No. A08–1730.

Supreme Court of Minnesota.

Jan. 5, 2011.

Rehearing Denied March 3, 2011.

William R. Skolnick, Sean A. Shiff, Skolnick & Shiff, P.A., Minneapolis, MN, for respondent.

Joseph W. Anthony, Janel M. Dressen, Anthony Ostlund Baer & Louwagie P.A., Minneapolis, MN, for appellant Steven B. Schmidt.

Lewis A. Remele, Kevin P. Hickey, Bassford Remele, P.A., Minneapolis, MN, for appellant Rider Bennett, LLP.

## OPINION

PAGE, Justice.

Respondent Katherine M. Rucker successfully sued her ex-husband, Robert Rucker, for fraud on the court committed during a dissolution of marriage action. The trial court found that in the dissolution action Robert Rucker engaged in an intentional course of material misrepresentation and non-disclosure concerning the value of his business interest in The Tile Shop that resulted in a "grossly unfair" property settlement. Katherine Rucker subsequently sued Robert Rucker's dissolution attorney and the law firm that employed him, appellants Steven B. Schmidt and Rider Bennett, LLP, based primarily on the same facts asserted in her suit against Robert Rucker. Katherine Rucker accused Schmidt and Rider Bennett of fraud, fraud on the court, and aiding and abetting fraud in the marriage dissolution action. The district court granted summary judgment to Schmidt and Rider Bennett, holding that due to the attorney-client relationship, Robert Rucker and his attorneys were in privity for purposes of the application of the doctrine of res judicata, and therefore, Katherine Rucker's separate action against Schmidt and Rider Bennett was barred. The court of appeals reversed and remanded, concluding that the attorney-client relationship, by itself, did not create privity between Robert Rucker and his attorneys for purposes of res judicata. For the reasons discussed below, we affirm.

The material facts in this case are not in dispute. During their marriage dissolution action, the Ruckers agreed to use an independent appraiser to establish the value of Robert Rucker's 50% interest in The Tile Shop. Robert Rucker was represented in the dissolution action by Schmidt, who was employed by the Rider Bennett law firm. Based on documents provided by Robert Rucker and employees of The Tile Shop, the independent appraiser valued Robert Rucker's interest in The Tile Shop at $7.125 million. Based on this valuation, the Ruckers signed a marriage termination agreement, drafted by Schmidt, that involved a property settlement award of $2.4 million to Katherine Rucker. Robert Rucker represented in the agreement that he had made full disclosure of his business interests. The Ruckers' marriage was dissolved by a judgment and decree entered on October 1, 2001.

Katherine Rucker subsequently sued Robert Rucker for fraud on the court, asserting that Robert Rucker intentionally provided deceptive, misleading, and incomplete information to the independent appraiser and to the district court about his interest in The Tile Shop that resulted in the undervaluation of that interest. In that litigation, the district court concluded that Katherine Rucker had established her

claim that Robert Rucker committed fraud on the court regarding the value of his interest in The Tile Shop. The district court found that the actual value of Robert Rucker's 50% interest in the Tile Shop was $15,367,200 and that Robert Rucker had engaged in an intentional course of material misrepresentation and non-disclosure during the marital dissolution action. Based on those findings, the court awarded Katherine Rucker an additional $3,285,864. After factoring in prejudgment interest, costs, and disbursements, the judgment entered against Robert Rucker was $4,215,673.49.

Robert Rucker appealed, but before his appeal was final, the Ruckers settled Katherine Rucker's claim. The settlement agreement, which specifically reserved Katherine Rucker's right to pursue an action against Schmidt and Rider Bennett, released and discharged Robert Rucker, The Tile Shop, and certain individuals and entities related to The Tile Shop from all further claims in exchange for a payment of $2,600,000.

On September 15, 2006, Katherine Rucker sued Schmidt and Rider Bennett, asserting fraud and deceit, fraud on the court, and aiding and abetting fraud. Katherine Rucker sought treble damages under Minn.Stat. §§ 481.07 [1] and 481.071 (2010).[2] The complaint alleges that Schmidt held a meeting with Robert Rucker and other senior management of The Tile Shop to discuss creating two sets of business projections: one of growth and new stores, to be used internally by The Tile Shop for actual business purposes, and one of no growth and no new stores to be given to the independent appraiser for use in the dissolution action. Schmidt and Rider Bennett denied this allegation and eventually moved for summary judgment on several grounds, including res judicata.

The district court, noting that "the alleged fraud arose out of Schmidt's representation of [Robert] Rucker in the underlying divorce proceeding" and that precedent establishes—and the federal and state courts of the Eighth Circuit consistently hold—that an attorney is in privity with his client for purposes of res judicata, held that privity existed between Robert Rucker, Schmidt, and Rider Bennett. As a result of that privity, the court granted summary judgment to Schmidt and Rider Bennett based on res judicata. The court of appeals reversed and remanded, holding that an attorney-client relationship alone is insufficient to establish privity as a matter of law. *Rucker v. Schmidt*, 768 N.W.2d 408, 417–18 (Minn. App.2009).[3] The court of appeals further

---

**1.** An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages. If the attorney permit [sic] any person other than a general law partner to begin, prosecute, or defend an action or proceeding in the attorney's name, the attorney giving such permission, and every person so using the name, shall forfeit $50 to the party against whom the action or proceeding is prosecuted or defended, recoverable in a civil action.
Minn.Stat. § 481.07.

**2.** Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, shall forfeit to the party injured treble damages, to be recovered in a civil action.
Minn.Stat. § 481.071.

**3.** The court of appeals' decision was a 2–1 decision. The dissenting judge agreed with the district court that "where the alleged fraud by respondent attorney arose only out of the attorney's representation of [the] ex-

held that before res judicata can be applied, the district court is required to analyze whether its application would work an injustice on the party against whom it is urged, and because the district court did not make such a determination, remand was necessary even if the finding of privity was appropriate. *Id.* at 417–18.

▮ Schmidt and Rider Bennett concede that a party is free to sue joint tortfeasors separately, *see Kisch v. Skow*, 305 Minn. 328, 331, 233 N.W.2d 732, 734 (1975), but argue that because they are in privity with Robert Rucker, Katherine Rucker's claims against them are barred. According to Schmidt and Rider Bennett, they are in privity with Robert Rucker because the facts underlying Katherine Rucker's claims against them are the same facts underlying her claims in her fraud action against Robert Rucker and the conduct at issue arose out of Schmidt's and Rider Bennett's representation of Robert Rucker in the dissolution action. They also argue, by analogy, that to the extent that the attorney-client relationship is akin to a principal-agent relationship, privity can be found on a principal-agent basis.

▮ Summary judgment is appropriate when there are no genuine issues of material fact and either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

We review the application of res judicata de novo. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn.2004). Res judicata applies as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies;[4] (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *Hauschildt*, 686 N.W.2d at 840. "All four prongs must be met for res judicata to apply." *Id.*

For purposes of determining whether the judgment in the fraud action bars Katherine Rucker's claims against Schmidt and Rider Bennett based on res judicata, the parties agree that: (1) Katherine Rucker's claims against Robert Rucker in the fraud action involved the same set of factual circumstances that are involved in her action against Schmidt and Rider Bennett; (2) there was a final judgment on the merits in Katherine Rucker's fraud action against Robert Rucker; and (3) Katherine Rucker had a full and fair opportunity to litigate the matter asserted in her fraud action against Robert Rucker. The dispute here is over the privity prong of the res judicata test—that is, whether Schmidt's and Rider Bennett's actions in representing Robert Rucker and their at-

---

husband," the attorney and the law firm are in privity with the ex-husband. *Rucker*, 768 N.W.2d at 418–19 (Schellhas, J., dissenting).

4. Res judicata and collateral estoppel are related doctrines. *Hauschildt*, 686 N.W.2d at 837. The analysis of whether privity exists for purposes of collateral estoppel is identical to the analysis of whether privity exists for purposes of res judicata; therefore, cases involving collateral estoppel as well as cases involving res judicata are relied upon herein when discussing privity. *See id.* (identifying a four-pronged collateral-estoppel test in which the privity prong is equivalent to that in the

res judicata test). Appellants argue that the privity prong as applied to collateral estoppel is different than when applied to res judicata in that privity for collateral estoppel only applies to the estopped party. Appellants have not, however, identified any substantive difference in the test to be applied for determining what constitutes privity in the context of collateral estoppel and what constitutes privity in the context of res judicata. Nor have appellants explained why any difference between collateral estoppel and res judicata in the application of privity requires a different test for determining whether privity exists.

torney-client relationship are sufficient to establish privity for purposes of res judicata.

Privity " 'expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.' " *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972) (quoting Restatement (First) of Judgments § 83 cmt. a (1942)). " 'Privies' to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." *Hentschel v. Smith*, 278 Minn. 86, 95, 153 N.W.2d 199, 206 (1967); *see also McMenomy v. Ryden*, 276 Minn. 55, 58–59, 148 N.W.2d 804, 807 (1967) (citing 30A Am.Jur. *Judgments* § 399 (1958)). According to the Restatement of Judgments, courts will find privity to exist for " 'those who control an action although not parties to it,' " " 'those whose interests are represented by a party to the action,' " and " 'successors in interest to those having derivative claims.' " *Margo–Kraft Distribs., Inc.*, 294 Minn. at 278, 200 N.W.2d at 47–48 (quoting Restatement (First) of Judgments § 83 cmt. a (1942)). However, privity may also be found in other circumstances, beyond those categories noted in the Restatement, when a person is otherwise " 'so identified in interest with another that he represents the same legal right.' " *McMenomy*, 276 Minn. at 59, 148 N.W.2d at 807 (quoting 30A Am.Jur. *Judgments* § 399 (1958)). Because the circumstances in which privity will be found cannot be precisely defined, we have held that determining whether parties are in privity requires a careful examination of the circumstances of each case. *Margo–Kraft Distribs., Inc.*, 294 Minn. at 278, 200 N.W.2d at 47.

Thus, the dispositive question is whether Schmidt and Rider Bennett are so identified in interest with Robert Rucker that they represent the same legal right. *See Beutz v. A.O. Smith Harvestore Prods., Inc.*, 431 N.W.2d 528, 533 (Minn.1988). A careful examination of the circumstances of this case leads us to conclude that Schmidt and Rider Bennett are not so identified in their interests with Robert Rucker, based on the attorney-client relationship, that they represent the same legal right.

We first examine the relationship in the context of the fraud action. Schmidt and Rider Bennett concede that they did not have a "controlling participation" or an "active self-interest" in the fraud action, so privity cannot be found on that basis. *See, e.g., Cnty. of Ramsey v. Stevens*, 283 N.W.2d 918, 924 (Minn.1979). Schmidt and Rider Bennett similarly concede that they are not successors in interest to a derivative claim of a party involved in the fraud action. *See, e.g., Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 902–03 (Minn. 1984). Finally, Schmidt and Rider Bennett do not claim that any party represented their interests in the fraud action against Robert Rucker. *See Pirrotta v. Indep. Sch. Dist. No. 347, Willmar*, 396 N.W.2d 20, 22 (Minn.1986). Therefore, none of the categorical circumstances in which the Restatement recognizes that privity may be found are asserted to exist in the fraud action. Nevertheless, the question remains whether Schmidt's and Rider Bennett's interests are so identified with Robert Rucker that they represent the same legal right with respect to Katherine Rucker's fraud claims. Schmidt and Rider Bennett contend that the required identity of interest is found in their attorney-client relationship with Robert Rucker

and Schmidt's conduct as Robert Rucker's attorney in the dissolution action.

As is true of the fraud action, Schmidt and Rider Bennett do not assert that any of the categorical circumstances in which privity has been found existed with respect to the dissolution proceeding.[5] That is, they do not claim that they had a "controlling participation" or an "active self-interest" in the dissolution proceeding, that they are successors in interest to a derivative claim of a party involved in the dissolution proceeding, or that any party represented their interests in the dissolution proceeding. Instead, Schmidt and Rider Bennett claim that they are in privity with Robert Rucker in the fraud action because the attorney conduct on which the fraud claim against them is based was taken in the context of their attorney-client relationship with Robert Rucker in the dissolution action. But that is not sufficient to establish an identity of legal interests.

An attorney is professionally obligated to advocate on behalf of his client. Therefore, the attorney and client necessarily have a common interest—more accurately, a common objective—in obtaining a favorable outcome for the client. Here, Schmidt and Rider Bennett had the common objective with Robert Rucker of obtaining a favorable outcome for him in the marriage dissolution proceeding. But that level of common interest in obtaining a favorable outcome in the dissolution action is not the kind of estate, blood, or legal interest that would give rise to privity for purposes of the fraud action. *See State v. Lemmer*, 736 N.W.2d 650, 660–61 (Minn. 2007) (stating that "[c]ommonality of interests alone is insufficient to establish privity"). Something more than the common objective of attorney and client in obtaining an outcome favorable to the client is necessary to establish privity. That something more—here, a mutuality of legal interest in the outcome of the dissolution action—is missing in this case. Therefore, we conclude that the attorney-client relationship and Schmidt's actions taken on behalf of Robert Rucker in the dissolution proceeding did not establish an identity of legal interests and therefore Schmidt and Rider Bennett were not in privity with Robert Rucker in the fraud action.[6]

We further conclude that Schmidt's and Rider Bennett's reliance, by analogy, on agency principles to establish privity fails. In support of this argument, Schmidt points to several opinions by federal circuit courts of appeal that have held that when the relationship between two parties is analogous to that of principal and agent, a

---

5. The concurrence faults us for our analysis of the dissolution proceeding based on its view that the conduct in that proceeding does not determine whether privity exists in the fraud action. To be clear, we assess the dissolution proceeding because it is the conduct in the dissolution proceeding that was the basis for the fraud action and that is alleged by Schmidt and Rider Bennett to create the identity of interests that creates privity for purposes of the fraud action. Indeed, the concurrence states that "the court must examine the legal relationship of the party and the nonparty, and their connection to the subject matter of the cause of action in the prior fraud lawsuit, to determine whether they were so closely identified to that cause of action that the same legal right was adjudicated." Here, the "subject matter of the cause of action in the prior fraud lawsuit" was the conduct in the dissolution proceeding. Our analysis, therefore, does precisely what the concurrence calls for.

6. In reaching this conclusion, we do not mean to suggest that an attorney representing a client can never be in privity with the client. *See McMenomy*, 276 Minn. at 59, 148 N.W.2d at 807 ("Who are privies requires careful examination into the circumstances of each case as it arises."). We only conclude that on the facts of this case privity has not been established.

judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, is a bar to the plaintiff's right of action against the other. *See, e.g., Pelletier v. Zweifel,* 921 F.2d 1465, 1502 (11th Cir.1991) (finding privity for purposes of res judicata between principal and agent); *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983) (finding privity for res judicata purposes between government entity and its officers); *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir.1959) (holding that a verdict and judgment in favor of principal entitles the agent to raise the judgment as a bar).

We have not had occasion to address whether the attorney-client relationship is analogous to that of principal and agent and therefore sufficient to establish privity. We now conclude that it does not. The instant lawsuit arises out of Schmidt's and Rider Bennett's actions in representing Robert Rucker in the dissolution proceeding. Although a client hires an attorney and that attorney has a fiduciary duty to act on behalf of the client, the attorney-client relationship is not tantamount to an agent-principal relationship. The principal and agent relationships where privity is found involve a mutuality of legal interests. That is, the legal interests of the principal and agent, or the corporation and its officers, are similarly affected by the outcome of a legal proceeding. That common legal interest is substantively different than the common objective shared by attorney and client of an outcome favorable to the client.

Further, although attorneys in the discharge of their professional duties are, in a restricted sense, agents of their clients, this agency is distinguishable from other agency relationships in that attorneys are also quasi-judicial officers of the court charged with a definite responsibility to the administration of justice in the interest of the public welfare. *Hoppe v. Klapperich,* 224 Minn. 224, 240, 28 N.W.2d 780, 791 (1947). Out of an attorney's status as an officer of the court arise duties that are public as distinguished from the purely private duties owed to one's client. *Id.* at 240, 28 N.W.2d at 791.

In *Hoppe* we described an attorney's dual obligation by saying:

"An attorney at law is an officer of the court. The nature of his obligations is both public and private. His public duty consists in his obligation to aid the administration of justice; his private duty, to faithfully, honestly, and conscientiously represent the interests of his client. In every case that comes to him in his professional capacity he must determine wherein lies his obligations to the public and his obligations to his client, and to discharge this duty properly requires the exercise of a keen discrimination; and *wherever the duties to his client conflict with those he owes to the public as an officer of the court in the administration of justice, the former must yield to the latter.* He therefore occupies what may be termed a *quasi*-judicial office."

*Id.* at 240–41, 28 N.W.2d at 791 (quoting *Langen v. Borkowski,* 188 Wis. 277, 206 N.W. 181, 190 (1925)). Thus, while in the principal and agent relationship the agent's duty is to act on behalf of the principal, the attorney, acting on behalf of the client, has a duty not only to the client, but also to "the public as an officer of the court in the administration of justice." Given the lack of mutuality of interest in the outcome of the legal proceeding between the attorney and his client and the attorney's duty to the public, we conclude that Schmidt's and Rider Bennett's analogy to agency principles does not lead to a finding of privity in this case.

We recognize that a number of courts from other jurisdictions have concluded that when an attorney is sued based upon his or her actions in representing a client, the attorney and the client are in privity.[7] Because our long-established test for determining whether privity exists between parties has served us well in varying situations over the years, we decline to adopt such a per se rule now. Applying our traditional test for determining whether privity exists in this case leads us to the conclusion that Schmidt and Rider Bennett are not in privity with Robert Rucker for purposes of res judicata and therefore res judicata does not bar Katherine Rucker's claims against Schmidt and Rider Bennett. As a result, we affirm the court of appeals.[8]

Affirmed and remanded to the district court for further proceedings consistent with this opinion.

GILDEA, C.J., took no part in the consideration or decision of this case.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, Justice (concurring).

I concur with the result reached by the majority that res judicata does not bar Katherine Rucker's fraud claim against Schmidt and Rider Bennett. But I disagree with the underlying reasoning of the majority, particularly its application of our res judicata doctrine to the facts of this case. Accordingly, I concur only in the result. To explain my disagreement with the majority, it is necessary to examine the law of res judicata, and then apply that law to the facts of this case.

Res judicata is an affirmative defense that must be pleaded and proven by the party asserting it. *Beutz v. A.O. Smith Harvestore Prods., Inc.,* 431 N.W.2d 528, 532 n. 3 (Minn.1988). It is a finality doctrine, which provides that there must be an end to litigation. *See Hauschildt v. Beckingham,* 686 N.W.2d 829, 840 (Minn. 2004). Pursuant to res judicata, a judgment on the merits of a lawsuit is a bar to a second lawsuit for the same cause of action, or any other matter that could have been, but was not, litigated in the first lawsuit. *Hauser v. Mealey,* 263 N.W.2d 803, 807 (Minn.1978). Its virtue is to "relieve parties of the burden of relitigating

---

**7.** *See Weinberger v. Tucker,* 510 F.3d 486, 492 (4th Cir.2007) (holding that "[t]he concept of privity requires an alignment of interests and not an exact identity of parties"); *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1169 (10th Cir.2000) (holding that law firm defendants appeared at previous proceeding by virtue of their activities as representatives of their client therefore creating privity); *In re El San Juan Hotel Corp.,* 841 F.2d 6, 10–11 (1st Cir. 1988) (holding that the defendants were co-perpetrators of the harming act and shared a significant relationship, thus satisfying the privity requirement); *Fearing v. Lake St. Croix Villas Homeowner's Ass'n,* No. 06–456, 2006 WL 3231970, at *9 (D.Minn. Nov. 8, 2006) (concluding that a lawyer is in privity with his previous client); *Jayel Corp. v. Cochran,* 366 Ark. 175, 234 S.W.3d 278, 281–84 (2006) (holding that attorney-client relationship be-

tween lawyer and landowners satisfied the privity requirement of res judicata); *Simpson v. Chi. Pneumatic Tool Co.,* 693 N.W.2d 612, 615–17 (N.D.2005) (holding that tool company's attorney was in privity with tool company for purposes of res judicata); *Merchs. State Bank v. Light,* 458 N.W.2d 792, 794–95 (S.D. 1990) (holding that relaxed privity concept should apply to the lawyer who prosecuted and directed the prior litigation).

**8.** To the extent that this appeal raises the question as to whether summary judgment based on res judicata is appropriate absent an analysis of whether the application of res judicata would work an injustice on the party against whom it is urged, that question is moot given our conclusion that res judicata does not bar Katherine Rucker's claims.

issues already determined in a prior action." *Beutz*, 431 N.W.2d at 531. Consequently, "a plaintiff may not split his cause of action and bring successive suits involving the same set of factual circumstances." *Hauser*, 263 N.W.2d at 807.

Whether res judicata bars a claim is a question of law that we review de novo. *Hauschildt*, 686 N.W.2d at 840. To determine whether a prior lawsuit and resulting judgment are a bar to the current lawsuit, we must examine whether the same evidence will sustain the cause of action or claim asserted in both matters. *See McMenomy v. Ryden*, 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967) ("The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions."). The elements of res judicata are that (1) the cause of action or claim involved the same set of factual circumstances; (2) the cause of action or claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *Hauschildt*, 686 N.W.2d at 840; *see also Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc.*, 482 N.W.2d 771, 774 (Minn.1992). It is undisputed that the first, third, and fourth elements of res judicata are not at issue in this case. The sole issue is whether the cause of action asserted by Katherine Rucker in the prior fraud lawsuit "involved the same parties or their privies" as the current lawsuit. *Hauschildt*, 686 N.W.2d at 840.

Pursuant to the doctrine of res judicata, we examine the cause of action or claim adjudicated in a prior lawsuit and the resulting judgment to determine whether that judgment bars the cause of action or claim asserted in the current lawsuit. *See Hauser*, 263 N.W.2d at 807 (" 'A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action ....' " (quoting *Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 466, 124 N.W.2d 328, 340)). The judgment in the dissolution lawsuit cannot be asserted as a bar to the current lawsuit because that judgment did not adjudicate Katherine Rucker's cause of action or claim for fraud. Thus, we must examine the fraud lawsuit brought by Katherine Rucker against Robert Rucker and the resulting judgment to determine whether that judgment bars the current lawsuit against Schmidt and Rider Bennett.

Moreover, the other three elements of res judicata focus on the prior lawsuit and judgment that adjudicated the cause of action for fraud. Specifically, the other three elements examine whether the prior lawsuit involved the same set of factual circumstances (cause of action for fraud) as the current lawsuit, whether there was a final judgment on the merits (cause of action for fraud) in the prior lawsuit, and whether the estopped party—Katherine Rucker—had a full and fair opportunity to litigate (cause of action for fraud) in the prior lawsuit. Thus, it logically follows that we should also examine the prior fraud lawsuit and resulting judgment to determine whether privity exists.

Privity means that the party and nonparty are so closely identified to the cause of action or claim adjudicated in the prior lawsuit and the resulting judgment that they represent the same legal right. *See Beutz*, 431 N.W.2d at 533; *see also Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972). We have previously identified several circumstances in which privity, and an identity of interest, is nearly always found to exist. Thus, " 'those who control an action although not parties to it' " represent an identity of interest and are in privity. *Margo–Kraft*, 294 Minn. at 278,

200 N.W.2d at 47–48. Additionally, " 'successors in interest to those having derivative claims' " and " 'those whose interests are represented by a party to the action' " represent the same legal right. *Id.* at 278, 200 N.W.2d at 48 (quoting Restatement (First) of Judgments § 83 cmt. a (1942)).

The majority concludes we must carefully examine the circumstances of each case to determine whether an identity of interest, and therefore privity, exists. *See id.* at 278, 200 N.W.2d at 47–48. I do not disagree that we must look at each case individually, but in my view, a more explicit explanation is required. Thus, the court must examine the legal relationship of the party and the nonparty, and their connection to the subject matter of the cause of action in the prior fraud lawsuit, to determine whether they were so closely identified to that cause of action that the same legal right was adjudicated. *See Beutz,* 431 N.W.2d at 533 (the nonparty must be "so identified in interest with another that he represents the same legal right"); *Hentschel v. Smith,* 278 Minn. 86, 95, 153 N.W.2d 199, 206 (1967) (the court examines "the relation of the parties to the subject matter" of the claim). It is not enough that the nonparty share a concern for the outcome of the litigation, or that the legal interests between the party and nonparty "happened to coincide." *Pirrotta v. Indep. Sch. Dist. No. 347, Willmar,* 396 N.W.2d 20, 22 (Minn.1986); *see also State v. Lemmer,* 736 N.W.2d 650, 660 (Minn. 2007). Rather, the nonparty must be so " 'connected' " with the party that the interests of both were " 'affected by the judgment' " in the prior fraud litigation.

*Margo–Kraft,* 294 Minn. at 278, 200 N.W.2d at 47 (quoting Restatement (First) of Judgments § 83 cmt. a (1942)).

My disagreement with the majority is that its conclusion regarding privity rests upon its examination of the dissolution lawsuit. Specifically, it states: "Something more than the common objective of attorney and client in obtaining an outcome favorable to the client is necessary to establish privity. That something more— here, a mutuality of legal interest in the outcome of the dissolution action—is missing in this case." In doing so, the majority misapplies the doctrines of res judicata and privity. While Schmidt and Rider Bennett's conduct in the dissolution lawsuit provides the factual support for Katherine Rucker's fraud claim, that conduct does not determine whether privity exists in the fraud lawsuit. Rather, the existence of privity is based on an identity of interest between Schmidt, Rider Bennett, and Robert Rucker in the fraud lawsuit.

Applying these principles to the fraud lawsuit, I would conclude that Schmidt and Rider Bennett have failed to establish that they were in privity with Robert Rucker. Several reasons support my conclusion. First, there is no evidence that Schmidt and Rider Bennett "controlled" the defense in the prior fraud lawsuit. They suggest that an attorney always directs the litigation, and therefore controls the lawsuit. They rely on cases from other jurisdictions to urge the court to adopt a per se rule that an attorney will always be in privity with a client for purposes of res judicata.[1] But privity requires that the

---

1. *See Plotner v. A T & T Corp.,* 224 F.3d 1161, 1169 (10th Cir.2000) (concluding that privity existed between law firm defendants and clients because law firm defendants appeared by virtue of activities as representatives of clients); *Fearing v. Lake St. Croix Villas Homeowner's Ass'n,* No. 06–456, 2006 WL 3231970, at *9 (D.Minn. Nov. 8, 2006) (holding that lawyer was in privity with client in underlying lawsuit); *Johnson v. U.S. Bank, N.A.,* No. 04–494, 2005 WL 1421461, at *2 (D.Minn. June 17, 2005) (holding that law firm was in privity with client when law firm was added to second litigation based on ac-

court go beyond the legal relationship of the parties and examine whether they were so closely identified with the cause of action in the prior lawsuit and judgment that they represent the same legal rights adjudicated in the prior lawsuit. *See Beutz*, 431 N.W.2d at 533. Thus, I would reject a per se rule establishing privity between attorneys and clients.

Here, Schmidt did not represent Robert Rucker or otherwise participate in the prior fraud lawsuit. Moreover, Schmidt did not direct or control that lawsuit. While Rider Bennett did represent Robert Rucker in the prior lawsuit, Rider Bennett's involvement was only as Robert Rucker's attorney. Importantly, Rider Bennett was not a decision-maker that controlled the litigation. Rather, Robert Rucker made the decisions in the litigation, and Rider Bennett took direction from him.

Additionally, Schmidt and Rider Bennett's interests in the prior fraud lawsuit were not represented by Robert Rucker in the fraud lawsuit.[2] Specifically, in the prior lawsuit Robert Rucker pursued his own interests and acted on his own behalf. While Schmidt and Rider Bennett may have had a common interest in a successful result for Robert Rucker in the prior lawsuit, privity requires a showing that Schmidt and Rider Bennett's legal interests were represented by Robert Rucker in that lawsuit. The legal interests of Schmidt and Rider Bennett on the one hand, and Robert Rucker on the other, are separate and distinct. Schmidt and Rider Bennett have different defenses available than Robert Rucker, and have different legal interests than Robert Rucker. For example, Schmidt and Rider Bennett could argue that they acted solely as Robert Rucker's attorneys, that Robert Rucker made all litigation decisions, that they were unaware of the fraud, and therefore they are not liable. Also, if Schmidt and Rider Bennett are found to have engaged in fraud, they are subject to treble damages under Minn.Stat. §§ 481.07–.071 (2010). Consequently, the legal interests of Schmidt, Rider Bennett, and Robert Rucker are separate and distinct.

In summary, privity means that the party and nonparty are so closely identified to the cause of action or claim adjudicated in the prior lawsuit and judgment that they represent the same legal right. Schmidt and Rider Bennett have failed to demonstrate that their connection to Robert Rucker at the time of the prior fraud lawsuit created an identity of interest such that their legal rights were adjudicated in the fraud lawsuit and the resulting judgment. Because they are not in privity with Robert Rucker, res judicata does not bar Katherine Rucker's claim against Schmidt and Rider Bennett. Consequently, I concur with the majority in affirming the court of appeals.

---

tions representing client in first litigation); *Merchs. State Bank v. Light*, 458 N.W.2d 792, 794–95 (S.D.1990) (concluding that relaxed privity concept in South Dakota included lawyer who directed the prior litigation).

**2.** Schmidt and Rider Bennett do not argue that they are " 'successors in interest to those having derivative claims' " in the prior fraud lawsuit. *Margo–Kraft*, 294 Minn. at 278, 200 N.W.2d at 48 (quoting Restatement (First) of Judgments § 83 cmt. a (1942)). Thus, this type of privity is not applicable.