*−This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0530**

James Klapmeier,
Appellant,

vs.

Joseph Michael Ebel, et al.,
Respondents.

**Filed December 1, 2014
Affirmed
Schellhas, Judge**

St. Louis County District Court
File No. 69VI-CV-12-1043

James Klapmeier, Spring Park, Minnesota (pro se appellant)

Bryan M. Lindsay, The Trenti Law Firm, Virginia, Minnesota (for respondents)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant asks us to reverse the district court's order dismissing his claims against respondents on res judicata grounds. We affirm.

# FACTS[1]

Appellant James Klapmeier owned a 60-foot Boatel houseboat with attached outboard motors. In July 2002, Klapmeier leased the houseboat to respondent Ebel's Minnesota Voyageur Houseboats Inc. (Voyageur) in an attempt to satisfy a $44,000 debt (Klapmeier's debt) that he owed to Voyageur's owners, respondents Joseph Ebel and Katy Ebel. The lease was to remain in effect until the houseboat was sold to a third party or until Voyageur collected "Net Rental from its rental of the Houseboat to the public" in an amount equaling Klapmeier's debt.

The lease agreement defines "Net Rental" as

> the gross rentals received by [Voyageur] from the renting of said Houseboat to the public less [Voyageur]'s actual costs in respect to the possession, maintenance, repair and operation of said Houseboat in accordance with this Lease. Such actual cost shall include the monies spent and paid by [Voyageur] to any third party for insurance, licensure, gas, maintenance, repair and including wages and related payroll costs paid to [Voyageur]'s employees for labor provided in respect to said Houseboat.

The agreement also provides:

> 3. <u>CARE OF HOUSEBOAT</u>. [Voyageur] shall treat the Houseboat as part of its Houseboat fleet for rental to the public and shall use, maintain and repair said Houseboat in substantially the same manner as it does with its owned houseboats.

> 4. <u>MAINTENANCE AND REPAIR</u>. [Voyageur], at [Voyageur]'s own cost and expense, shall keep the Houseboat in good repair, condition and working order. [Voyageur] shall be responsible for all janitorial service in respect to the

---

[1] The facts are taken from the appellate record and from the court file in a prior action, described herein, of which file the district court took judicial notice in the present action.

2

Houseboat. [Voyageur] shall further provide all gas and oil necessary to operate said Houseboat.

5. RETURN OF HOUSEBOAT. At the expiration of this Lease, [Voyageur] shall return to [Klapmeier] the Houseboat in good repair, ordinary wear and tear resulting from use excepted. At the end of the Lease it shall be [Klapmeier]'s responsibility to transport the Houseboat from [Voyageur]'s place of business at the Ash River Trail, Orr, Minnesota to such location as [Klapmeier] desires . . . .

Additionally, the lease required Voyageur to provide Klapmeier with an annual "written report of the Net Rental from the Houseboat for the calendar year in question showing gross rentals and all costs by date and amount."

In June 2008, Klapmeier commenced an action (prior action) against the Ebels.[2] Klapmeier alleged breach of contract against the Ebels and Voyageur based on their "fail[ure] to provide annual accountings" as required by the lease and alleged that "as a result of said breach, [the Ebels and Voyageur] are believed to have profited from the use of the Houseboat contrary to the Lease." Klapmeier also asserted a claim for misrepresentation, alleging that the Ebels and Voyageur falsely represented that they would attempt to sell the houseboat and misrepresented the amount of income generated by rental of the houseboat. Klapmeier also alleged that, "[b]ut for [the Ebels and Voyageur's] misrepresentations, [Klapmeier] would have either been able to sell [the

---

[2] Before trial in the prior action, the parties agreed to amend the title of the case for purposes of trial to include Voyageur as a party defendant. Following this agreement, Voyageur was listed as a party defendant in every relevant document in the court file, including the special verdict form in the prior action.

house]boat or lease it to earn income." Klapmeier sought lost rental income and the return of the houseboat.

Klapmeier tried his breach-of-contract claim to a jury in January 2009.[3] The jury returned a special verdict, finding that the Ebels and Voyageur breached the lease, that the breach did not "directly damage" Klapmeier, and that Klapmeier still owed $22,969 on his debt. The district court granted judgment to the Ebels and Voyageur in the amount of $22,969 plus costs and disbursements and declared that the Ebels and Voyageur were entitled to possession of the houseboat.

In March 2009, Klapmeier moved for judgment as a matter of law, a new trial, and an order granting him possession of the houseboat. In their motion in opposition, the Ebels and Voyageur informed the district court that "[t]he parties agreed and stipulated that the [houseboat] should be transferred to [Klapmeier]." The court denied Klapmeier's motion for judgment as a matter of law or for a new trial but concluded that "[Klapmeier] is entitled to possession of the [houseboat]" and ordered that "[the Ebels and Voyageur] shall release the [houseboat] to [Klapmeier]," noting in its attached memorandum that the houseboat "shall be returned . . . within a reasonable time and in a condition acceptable under the terms of the lease." The court amended the order for judgment to declare that Klapmeier was entitled to possession of the houseboat. Klapmeier appealed from the district court's order.

---

[3] Before trial in the prior action, Klapmeier's counsel stated that "[t]he complaint provides for a fraud [sic] claim, and I will not argue it or present it in opening statements but just want to preserve that claim in case something comes out at trial." The special verdict form in the prior action did not include a question about misrepresentation or fraud.

In June 2009, Klapmeier moved the district court for an order compelling the Ebels and Voyageur to place the houseboat into the water. The district court concluded that "[the Ebels and Voyageur are] under no duty to place the [houseboat] into the water" and denied Klapmeier's motion. We subsequently affirmed the district court's posttrial orders in an unpublished opinion, noting in dicta that "[t]he lease required [Voyageur] to return the houseboat to [Klapmeier] in good repair upon expiration of the lease." *Klapmeier v. Ebel*, No. A09-1005, 2010 WL 2732049, at *5 (Minn. App. July 13, 2010). Klapmeier did not retake possession of the houseboat until October 2010.

In July 2012, Klapmeier pro se commenced the present action against the Ebels and Voyageur, alleging that the Ebels and Voyageur "stripped the [house]boat of almost every piece of equipment, part and supply," including a hot tub, a microwave, fire extinguishers, bed linens, curtains, kitchen and cooking supplies, garbage cans, coolers, tie-down ropes, life jackets, and life preservers; that "[e]xternal rust and extensive mold[] [exist] both inside and outside the [house]boat," along with other damage to items on the houseboat; that the houseboat's "engines were never updated" and its "[o]ld batteries were not replaced"; and that he incurred "unnecessary and extra costs" related to the Ebels and Voyageur's delay in allowing Klapmeier to access the houseboat. Klapmeier states that "the basis for . . . the Complaint . . . is a formal Houseboat Lease" that "required [the Ebels and Voyageur] to 'treat the Houseboat as part of [Voyageur's] Houseboat fleet for rental to the public and . . . use, maintain and repair said Houseboat in substantially the same manner as [Voyageur] does with its owned houseboats,'" "to 'keep the Houseboat in good repair, condition and working order,'" and "to return the

5

Houseboat 'in good repair.'" Klapmeier references trial testimony of the Ebels in the prior action, the district court's posttrial orders in the prior action, and this court's opinion affirming the posttrial orders. He seeks damages in the amount of $45,866.10, representing the "[u]nnecessary and extra costs" to access the houseboat; to clean the houseboat, replace items on the houseboat that were removed or destroyed, and repair items on the houseboat that were damaged; and to trade in the houseboat's old engines for new engines, controls, and cables.

The Ebels and Voyageur answered Klapmeier's complaint, asserting affirmative defenses that include res judicata, and moved for declaratory judgment or dismissal of the claims asserted in the present action, arguing that the present claims are barred by res judicata. Klapmeier opposed the motion on the basis that the present action asserts "new claims . . . that did not exist at the time of the [prior action]" and that res judicata does not bar his claims. The district court dismissed the present action based on the doctrine of res judicata, concluding that the present claims are barred because the prior action involved the same claims for relief and the same parties as the present action and resulted in a final judgment on the merits, and Klapmeier had a full and fair opportunity to litigate the matter. The court entered a judgment of dismissal on February 4, 2014.

This appeal follows.

## D E C I S I O N

"The application of res judicata presents a question of law subject to de novo review." *Schober v. Comm'r of Revenue*, 853 N.W.2d 102, 111 (Minn. 2013). "Res judicata is a finality doctrine that mandates that there be an end to litigation." *Hauschildt*

6

*v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004). "Res judicata is an affirmative defense that must be pleaded and proven by the party asserting it." *Rucker v. Schmidt*, 794 N.W.2d 114, 121 (Minn. 2011); *see also* Minn. R. Civ. P. 8.03 (including res judicata in a list of avoidance and affirmative defenses).

"Under res judicata, a party is required to assert all alternative theories of recovery in the initial action." *Id.* (quotation omitted).

> Res judicata precludes "a subsequent claim when: (1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter."

*Beaulieu v. Minn. Dep't of Human Servs.*, 825 N.W.2d 716, 724 (Minn. 2013) (quoting *State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001)). "When these four requirements have been satisfied, res judicata bars claims regarding matters actually litigated and every matter that might have been litigated in the prior proceeding." *Schober*, 853 N.W.2d at 111; *see also Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007) ("Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action."). "Although the doctrine of res judicata should not be applied rigidly in contravention of public policy, the doctrine reflects courts' disfavor with multiple lawsuits for the same cause of action and wasteful litigation." *Schober*, 853 N.W.2d at 111 (quotation and citations omitted).

The first requirement of res judicata is that "the earlier claim involved the same claim for relief" as the subsequent claim. *Beaulieu*, 825 N.W.2d at 724 (quotation omitted). "Central to considering this [requirement] is what is meant by 'claim' or 'cause

of action.'" *Hauschildt*, 686 N.W.2d at 840. "A claim or cause of action is a group of operative facts giving rise to one or more bases for suing." *Id.* (quotation omitted). "Therefore, the focus of [the first requirement of] res judicata is whether the second claim arises out of the same set of *factual circumstances*" as did the first claim. *Id.* (quotation omitted). "The commonly used test for determining whether a former judgment bars subsequent action is to inquire whether the same evidence will sustain both actions." *Schober*, 853 N.W.2d at 111.

In this case, Klapmeier leased the houseboat to Voyageur. The lease required Voyageur to engage in care, maintenance, and repair of the houseboat. The lease also required Voyageur to report the houseboat's "gross rentals and all costs by date and amount," including costs associated with the houseboat's care, maintenance, and repair. Klapmeier's prior claims arose out of the Ebels and Voyageur's breach of the lease's reporting requirements, and Klapmeier's present claims arise out of the Ebels and Voyageur's alleged breach of the lease's requirements regarding care, maintenance, and repair of the houseboat. Klapmeier argues that the present claims are unlike the prior claims because they are "based on discovery in 2010," when Klapmeier retook possession of the houseboat following this court's affirmance of the district court's posttrial orders. The supreme court has stated that two "claims cannot be considered the same cause of action if 'the right to assert the second claim did not arise at the same time as the right to assert the first claim.'" *Hauschildt*, 686 N.W.2d at 841 (quoting *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000)).

8

But nothing in the appellate record shows that the Ebels and Voyageur breached the lease's requirements regarding care, maintenance, and repair *after* their breach of the lease's reporting requirements—the subject of the prior action. Before the district court, the Ebels and Voyageur argued that the "genesis" of Klapmeier's present claims is "identical" to that of his prior claims, relying on the "basis of recovery" that Klapmeier asserted in his complaints and supporting documentation in the present and prior actions. Klapmeier submitted no responsive affidavit or evidence to rebut the Ebels and Voyageur's argument and evidence. We conclude that the Ebels and Voyageur met their burden to prove that Klapmeier's present claims arise out of the same set of factual circumstances as his prior claims and involve the same request for relief. The first requirement of res judicata therefore is satisfied.

The second requirement of res judicata is that "the earlier claim involved the same parties or their privies" as the subsequent claim. *Beaulieu*, 825 N.W.2d at 724 (quotation omitted). Klapmeier does not contest that the second requirement is satisfied here. His implicit concession is logical because he brought both the present claims and prior claims against the same parties—the Ebels and Voyageur.[4] The second requirement of res judicata is satisfied.

---

[4] As discussed above, although the complaint in the prior action names only the Ebels as party defendants, Voyageur also was treated as a party defendant in the prior action. But even if Voyageur were not a party defendant in the prior action, Voyageur is a privy of its owners, the Ebels, for purposes of res judicata. *See Rucker*, 794 N.W.2d at 118 ("'Privies' to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." (quotation omitted)).

The third requirement of res judicata is that "there was a final judgment on the merits." *Beaulieu*, 825 N.W.2d at 724 (quotation omitted). Klapmeier argues that "the present claims were *not* in existence at the time of the [prior action] thereby making a final judgment on the merits impossible." But the third requirement demands only that the *prior action—not* the *present claim—*resulted in a final judgment on the merits. *See Kern v. Janson*, 800 N.W.2d 126, 129 n.1 (Minn. 2011) (noting that "a final judgment on the merits *in one action* bars further relief on a later claim if" the other three requirements of res judicata are satisfied (emphasis added)); *Rucker*, 794 N.W.2d at 122 (Dietzen, J., concurring) (stating that the third requirement examines "whether there was a final judgment on the merits . . . *in the prior lawsuit*" (emphasis added)). Here, the prior action culminated in a trial by jury, the jury reached a special verdict, and the district court entered judgment based on the verdict. The district court rejected Klapmeier's subsequent attack on the judgment in the prior action, and this court affirmed that rejection on appeal. The third requirement of res judicata is satisfied.

The fourth requirement of res judicata is that "the estopped party had a full and fair opportunity to litigate the matter." *Beaulieu*, 825 N.W.2d at 724 (quotation omitted). The supreme court has stated:

> "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."

*Joseph*, 636 N.W.2d at 328 (quotation omitted).

10

Klapmeier argues that because "the present claims were *not* in existence at the time of the [prior action,] . . . there could not have been any type of opportunity to litigate the matter." But Klapmeier conflates the fourth requirement's focus on the procedural possibilities presented by the prior action with the logical possibility of asserting the present claims in the prior action.

As noted by the district court, Klapmeier was represented by counsel in the prior action, he was afforded a trial by jury, the district court heard and ruled on his posttrial motions, and he obtained review of those rulings by this court. The appellate record contains no hint of any significant procedural limitation at any stage of the prior action. Moreover, Klapmeier's ownership interest in the houseboat and lessor-lessee relationship with the Ebels and Voyageur support a conclusion that Klapmeier had the incentive to litigate the prior action fully and effectively. The fourth requirement of res judicata is satisfied.

Because all four requirements are satisfied, we must determine whether the present claims could have been litigated in the prior action; if so, they are barred by the doctrine of res judicata. *See Schober*, 853 N.W.2d at 111. Klapmeier argues that the present claims could not have been brought in the prior action because he was prevented from having any access to the houseboat during the prior action. Although Klapmeier did not retake possession of the houseboat until after the prior action had concluded, he could have sought relief from the district court, if necessary, to inspect the houseboat. *See* Minn. R. Civ. P. 26.02(a), (b). Had Klapmeier done so, any claims of breached duties of care, maintenance, and repair would have been discovered and could have been litigated

11

in the prior action. Furthermore, Klapmeier's present claims relating to the Ebels and Voyageur's purported delay in Klapmeier's repossession of the houseboat and the houseboat's condition at the time of repossession could have been raised in the prior action, in which the district court ordered the Ebels and Voyageur to release the houseboat to Klapmeier "within a reasonable time and in a condition acceptable under the terms of the lease."

Res judicata bars Klapmeier's present claims. The district court therefore did not err by dismissing Klapmeier's present action.

**Affirmed.**