**Hugh H. SMITH, et al., Appellants,**

v.

**Charles R. JENKINS, et al., Appellees. .**

**No. 88–207.**

District of Columbia Court of Appeals.

Argued May 25, 1989.
Decided July 6, 1989.

C. Alexander Hewes, Jr., pro se., with whom Paul R. Pearson, was on the brief, for appellants.

Craig N. Goodrich, with whom Lee Calligaro, Washington, D.C., was on the brief, for appellees.

Before MACK, NEWMAN and SCHWELB, Associate Judges.

MACK, Associate Judge:

This suit for damages arose from the sale of partnership shares in a Maryland real estate venture. In prior appeals, we upheld the trial court's personal jurisdiction in this matter, *Smith v. Jenkins,* 452 A.2d 333 (D.C.1982), and its order denying a motion to dismiss on grounds of *forum non conveniens, Jenkins v. Smith,* 499 A.2d 128 (D.C.1985) (en banc). Appellants, who prevailed in each of the previous actions, now appeal from the trial court's order dismissing the action on grounds of *res judicata* and collateral estoppel (claim preclusion and issue preclusion). We affirm.

## I. BACKGROUND

### A. *The Underlying Transactions*

The complaint alleges that on or about September 30, 1973, appellees Charles R. Jenkins and William E. Esham, Jr. formed a limited partnership with Robert S. Bounds[1] called Herring Landing Limited, in which they were the general partners. Under the agreement, there were three general partnership shares and seventeen limited partnership shares. The purpose of the partnership was to acquire title to certain real property located in West Ocean City, Maryland, for investment and development. Appellants Hugh H. Smith, C. Alexander Hewes and Augmentation, Inc., a Maryland corporation, allegedly signed on as limited partners on October 31, 1973, with the understanding that the purchase price of the property was to be $400,000. Nevertheless, on November 8, 1973, the property was sold for $300,000 to the Skyline Development Corporation, a company controlled by appellee Jenkins. In the same transaction, Herring Landing Limited purchased the property from Skyline for $400,000, allegedly without the knowledge of appellants. Skyline thereafter executed a check to appellee Bounds for $49,000.

In the fall of 1976, Bounds, in violation of the partnership agreement, secretly and without the knowledge or consent of Jenkins or Esham undertook to assign his limited partnership shares in Herring Landing Limited to Dr. Rufus Johnson as collateral for a debt. In April 1977, Dr. Johnson, concerned with Bounds' financial difficulties, met with Jenkins and Esham and offered to purchase their partnership shares for $25,000 each, thereby becoming sole general partner in Herring Landing Limited. To pay for the shares, Dr. Johnson, his wife, and Ocean Holiday Investments, Inc., a corporation controlled by Dr. Johnson, executed two promissory notes.

After Dr. Johnson agreed to purchase the general partnership shares but before consummation of the agreement, Jenkins and Esham transferred the funds in the partnership's bank account to the trust account of the partnership's attorney, Paul Ewell, with instructions to distribute the funds among the then-existing partners after paying all outstanding bills. The transaction between Dr. Johnson and appellees was completed on May 16, 1977. However, upon learning that the partnership funds had been distributed to the former partners before the deal was closed, Dr. Johnson, acting through Ocean Holiday, demanded that they repay the partnership monies.

### B. *The Maryland Litigation*

In July 1978 the Johnsons and Ocean Holiday withheld payments due on the promissory notes. Jenkins and Esham filed an action in Maryland for payment on the notes, and the Johnsons and Ocean Holiday counterclaimed, alleging fraud, mismanagement, and conversion of partnership property, and seeking a setoff

---

**1.** Bounds was originally named as a defendant in this action, but appellants allege that they were unable to effect service of process upon him since he was residing in Texas during the proceedings in the trial court.

against obligations under the promissory notes.[2] Later the Johnsons and Ocean Holiday amended the counterclaim to add a claim against Ewell. Specifically, the counterclaim contended that Jenkins breached his fiduciary duty to the partnership by profiting, through Skyline, from the sale of the West Ocean City real estate to Herring Landing; that Jenkins, Esham and Ewell made an improper distribution of partnership assets in May 1977; that Ewell engaged in legal malpractice in executing the improper distribution of May 1977; that Jenkins, Esham and Ewell failed to file an amended partnership certificate in connection with the 1976 sale of the general partnership shares to the Johnsons and Ocean Holiday, thereby "damag[ing them] in connection with their purchase of partnership shares"; that Jenkins and Esham abused their general partnership powers to obtain an exorbitant profit from the 1976 sale of their shares; that the Johnsons and Ocean Holiday were entitled to prejudgment interest on the $100,000 obtained and withheld from the partnership by Jenkins in 1973; and that the Johnsons and Ocean Holiday were entitled to punitive damages against Jenkins, Esham and Ewell.

Nearly eight years elapsed between the filing of the Maryland action and trial on the merits, during which time the Johnsons and Ocean Holiday sold their entire interest in Herring Landing to Augmentation, Inc., one of the original limited partners, for $115,000. The Johnsons and Ocean Holiday also assigned to Augmentation any and all claims they might have against Jenkins, Esham, Bounds, and Ewell. In March 1986 the Maryland trial court entered judgments in favor of Jenkins, Esham and Ewell for the amounts due under the promissory notes, and against the Johnsons, Ocean Holiday, and Augmentation on their counterclaims. That decision was affirmed by unpublished opinion in April 1988 by the Court of Special Appeals of Maryland.

### C. The District of Columbia Litigation

Appellants in the action now on appeal, Smith, Hewes, and Augmentation, who were original limited partners in Herring Landing, filed this action in the Superior Court on March 25, 1981, seeking damages arising from misrepresentations made by Robert Bounds on his behalf and on behalf of the other appellees, Jenkins and Esham, in connection with the formation of the Herring Landing partnership and the acquisition of real property in West Ocean City, Maryland. Specifically, the complaint alleged breaches of common-law and statutory fiduciary duties, misrepresentation, fraudulent concealment, conversion, fraud in management, and conspiracy.

After extensive litigation over pretrial motions to dismiss on grounds of the trial court's asserted lack of personal jurisdiction, *Smith v. Jenkins, supra,* and *forum non conveniens, Jenkins v. Smith, supra,* appellees moved to dismiss on grounds of *res judicata* and collateral estoppel. After certain complications which it is unnecessary for us to recite, this motion was ultimately granted on January 29, 1988. This appeal followed.

## II. DISCUSSION

Appellees have advanced two theories of prior adjudication in support of their contention that the Maryland judgment foreclosed further litigation in this case: *res judicata,* or claim preclusion, and collateral estoppel, or issue preclusion.[3] In

---

2. Since our record does not include a copy of the Maryland counterclaim, we look to the Maryland opinion and to the briefs filed herein to determine its content. In doing so, we note that the party seeking reversal bears the burden of presenting a record sufficient to show that error occurred, *Parker v. Stein,* 557 A.2d 1319, 1323 (D.C.1989); *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 294 (D.C.1987); *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982), and if the record is insufficient for that purpose, we lack discretion to reverse. *Levene v. Oliver,* 158 A.2d 324, 325 (D.C.1960).

3. The term *res judicata* has sometimes been used to refer to both the narrow common law doctrine of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). *See Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535 (5th Cir.1978) (explaining terminology). To avoid confusion, we employ the more modern terminology, referring to narrow *res judicata* as "claim preclusion" and collateral estoppel as "issue preclusion," in the remainder of this opinion. *See*

determining the applicability of these doctrines to this appeal, our principal task is to unravel the various parties, claims and issues involved in this appeal to determine whether any or all of them are subject to the preclusive effects of the prior litigation in Maryland. At the outset, we note that the pendency of the current litigation prior to the conclusion of that in Maryland does not deprive the latter of any preclusive effect it may have under principles of *res judicata* or collateral estoppel. *Old Colony Trust Co. v. Commissioner of Internal Revenue,* 279 U.S. 716, 728, 49 S.Ct. 499, 503, 73 L.Ed. 918 (1929); *Chicago, Rock Island & Pacific Railway Co. v. Schendel,* 270 U.S. 611, 616–17, 46 S.Ct. 420, 422, 70 L.Ed. 757 (1926); *Agarwal v. Johnson,* 25 Cal.3d 932, 603 P.2d 58, 71–72, 160 Cal. Rptr. 141 (1979).

### A. Res Judicata *or Claim Preclusion*

Under the doctrine of claim preclusion, "a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. National Screen Service,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Yuen v. Durham,* 488 A.2d 1346, 1348 (D.C.1985); *Henderson v. Snider Brothers, Inc.,* 439 A.2d 481, 485 (D.C.1981) (en banc); *Habib v. Keats,* 286 A.2d 854, 856 (D.C.1972). Further, "the effect of a judgment extends to the litigation of all issues relevant to the same cause of action between the same parties, whether or not raised at trial." *Kaspar Wire Works, supra* note 3, 575 F.2d at 535–36; *see also Henderson, supra,* 439 A.2d at 485. The doctrine is therefore said to "bar" the relitigation of claims previously adjudicated, and to "merge" into the prior judgment any available claims that plaintiff failed to raise in the antecedent litigation, preventing their consideration in a new action. *Kaspar Wire Works, supra* note 3, 575 F.2d at 535.

#### 1. Identity of Claims

Momentarily putting aside the inevitable inquiry into the identity of the parties in the two cases, there can be no doubt that, for our purposes, the underlying claims are identical. A "claim" or "cause of action," for purposes of claim preclusion, comprises "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982); *see Yuen, supra,* 488 A.2d at 1348 (*"res judicata* bars further claims based on the same transaction"). Further, "[w]hat factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically," considering "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." RESTATEMENT (SECOND) OF JUDGMENTS, *supra,* § 24(2). Put another way, "the 'transaction' or 'occurrence' is the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do not change this substantial identity so as to support piecemeal appeals." *Clark v. Taylor,* 163 F.2d 940, 942–43 (2d Cir.1947); *see also Mathews v. New York Racing Association, Inc.,* 193 F.Supp. 293, 294 (S.D.N.Y. 1961).

■ Within this broad meaning, the case on appeal concerns the same claim as that adjudicated in the Maryland litigation. Even putting aside the specific legal theories upon which appellants' demands for relief are premised, which are largely the same, the underlying facts of the case comprise a single occurrence or chain of related events. The claim in Maryland, like that before us, was at least partly predicated on appellees' alleged misrepresentations regarding the purchase price of the property to be acquired by the Herring Landing partnership: in Maryland, it was asserted as one of seven issues in dispute, and here, it is asserted as the main basis of the litigation. These events were identical, and thus necessarily satisfied the Restatement

WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCE- DURE: *Jurisdiction* § 4402 (1981).

criteria, that they be substantially related in time, space, origin, and motivation, constitute a convenient trial unit, and their treatment as such can be reasonably expected to conform to the parties' understanding or expectations about the nature and underlying unity of the case.

Further, the fact that the scope of the Maryland litigation was broader than that of the case on appeal, encompassing alleged acts neither alleged herein nor necessary to support the instant claims, does not attenuate the substantial identity of the claims. The fact that the Maryland court decided matters beyond the scope of this litigation cannot negate the fact that it also decided on the entire claim on appeal.

Nevertheless, appellants contend that the claim on appeal herein differs from that in Maryland to the extent that it alleges particular misrepresentations made to appellants in the District of Columbia, whereas the Maryland action did not allege such particular misrepresentations. The question of *forum non conveniens* was not in issue in the Maryland litigation, and there is nothing in our record of the Maryland action that suggests that much attention was given to the locus of the asserted misrepresentations. There is no record that the scope of the Maryland counterclaim was limited to misrepresentations made within the borders of Maryland; rather, it is apparent that the counterclaim was intended to encompass misrepresentations made to the entire partnership, including each of the limited partners. In the absence of such a record we must reject this argument.[4]

In attempting to distinguish their claims in the two jurisdictions, appellants also contend that the claim on appeal asserts fraud

and misrepresentation under District of Columbia law, whereas the Maryland claim asserted such violations only under Maryland law. However, this distinction alone cannot convert one claim into two. If the mere transfer of a claim based upon the same transaction from the courts of one jurisdiction to those of the next, with the attendant change in governing law, were all that were required to escape claim preclusion, then virtually all bars to relitigation in a second jurisdiction would be overcome by the very change of venue, and the purposes of claim preclusion would be defeated. We believe it is more consistent with the purposes of claim preclusion and the transaction-based or occurrence-based understanding of the term "claim" to treat a single transaction or related series of occurrences supporting a single alleged wrong, whether or not that wrong is recognized under local law, as one claim. As Professors Wright, Miller and Cooper have observed in their treatise:

> A second action may be precluded on the ground that the same claim or cause of action was advanced in the first action even though a different source of law is involved. Claim preclusion may apply to theories advanced under different statutes, under common law and statute, or under the law of different sovereigns.

WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: *Jurisdiction, supra* note 3, § 4411.[5] We are thus also constrained to reject this argument.

### 2. Identity or Privity of Relevant Parties

Of course, in addition to the identity of claims, there must generally be some identity of the parties for claim preclusion to

---

**4.** As to our understanding of the contents of the counterclaim, see *supra* note 2.

**5.** The same authors observe elsewhere:

> The assertion of statutory or nonstatutory rights arising under the laws of different sovereigns might seem to thwart claim preclusion. How, after all, can two legal systems combine to create a single claim? Fortunately, courts have been far too practical to dither about such abstract conceptualizing.

*Id.* And as another author has remarked, "[A] change from law to law constitutes no new or different cause of action, where the two laws invoked are intended to protect the same interest, even though recovery depends upon different factual elements and even though different legal theories attach." Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?*, 21 ORE.L.REV. 319, 332 (1942) (quoted in WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: *Jurisdiction, supra* note 3 § 4411 n. 1).

apply.[6] *Kaspar Wire Works, supra* note 3, 575 F.2d at 535–36. A comparison of the case on appeal with the Maryland litigation reveals a complicated roster of plaintiffs and defendants, counterclaimants, successors in interest, nonlitigant participants in the underlying transactions, and one unserved named defendant. The Maryland plaintiffs and the District of Columbia defendants, upon whom service has been effected, are the same. With the exception of appellant Augmentation, the plaintiffs herein are distinct from the defendant-counterclaimants in Maryland. Again excepting Augmentation, there is no evidence in the record that appellants herein were owners, subsidiaries, agents or affiliates of any of the plaintiffs in the Maryland suit.

Nevertheless, claim preclusion will bar relitigation of the claims if the parties to the second suit were in privity with the parties to the first. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Lawlor, supra,* 349 U.S. at 326, 75 S.Ct. at 867. A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case. *Jefferson School of Social Science v. Subversive Activities Control Board,* 118 U.S. App.D.C. 2, 9, 331 F.2d 76, 83 (1963). The "orthodox categories" of privies are "those who control an action although not parties to it[7] ...; those whose interests are represented by a party to the action ...; [and] successors in interest." *Lawlor, supra,* 349 U.S. at 329 n. 19, 75 S.Ct. at 869 n. 19 and

accompanying text (quoting RESTATEMENT (FIRST) OF JUDGMENTS § 83, Comment a (1942)) (text omitted in original).

■ An examination of the identity and status of appellants herein indicates that Augmentation, Hewes and Smith were all either parties or privies to the Maryland action. As we have already observed, appellant Augmentation was a direct party to both actions. It is immaterial that the relevant claim was adjudicated as a counterclaim in Maryland and is raised as the basis of a plaintiff suit here; Augmentation has interposed it against the same parties in both actions, and it has been formerly adjudicated in a sister jurisdiction. Nor is it material that Augmentation participated in the Maryland action as general partner and successor to the interests of the Johnsons and Ocean Holiday, and sues here as an original limited partner. It is a fundamental purpose of claim preclusion to prevent the relitigation of claims that plaintiffs have already had a full and fair opportunity to litigate, thereby protecting adversaries from expensive and vexatious multiple lawsuits, conserving judicial resources, and minimizing the likelihood of inconsistent outcomes. *Montana v. United States, supra,* 440 U.S. at 153–54, 99 S.Ct. at 973–74; *cf. Roach v. Teamsters Local Union No. 688,* 595 F.2d 446, 448–49 (8th Cir.1979) (en banc). Irrespective of the capacity in which Augmentation participated in the Maryland suit, it had a full and fair opportunity there to litigate an identical claim

---

**6.** *But see Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979) (where fairness dictates, permitting "offensive" use of issue preclusion, *i.e.,* estoppel against defendant to relitigate issue previously litigated unsuccessfully against the same or a different party); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (abandoning requirement of mutuality of parties, *i.e.,* estoppel to renew issue litigated in prior action against different parties).

**7.** But as the Supreme Court has since noted, in *Montana v. United States, supra,* 440 U.S. at 154 n. 5, 99 S.Ct. at 974 n. 5.

Although the term "privies" has been used on occasion to denominate nonparties who con-

trol litigation ... this usage has been criticized as conclusory and analytically unsound [citing 1B J. MOORE, FEDERAL PRACTICE ¶ 0.411[6], at 1553 (2d ed. 1974); Note, *Developments in the Law—Res Judicata,* 65 HARV.L. REV. 818, 856 (1952)]. The nomenclature has been abandoned in the applicable section of [RESTATEMENT (SECOND) OF JUDGMENTS § 83 (Tent. Draft No. 2, Apr. 15, 1975)].

While the Court criticized the treatment of non-party control of litigation as a subcategory of privity, however, it did assert that claim preclusion applied to nonparties who exerted control over a former litigation of the claim involved. *Montana v. United States, supra,* 440 U.S. at 154, 99 S.Ct. at 974.

agains the same adversaries.[8] Accordingly, Augmentation's current claim is barred by the rule of claim preclusion.

■ Appellants Hewes and Smith, although they were apparently not parties to the Maryland litigation, were nevertheless in privity with the parties to that action. Hewes and Smith were among the original limited partners in Herring Landing, and Hewes has remained a limited partner throughout the relevant time period. As a lead attorney in both actions, Hewes did maintain "control" of the Maryland litigation as well as the matter on appeal. While neither Hewes nor Smith is a successor in interest to any of the parties that participated in the Maryland action, their interests were represented by—and represent—the claims of the parties to the former suit.

Hewes' control of the Maryland litigation is the inescapable consequence of his legal representation of the defendant-counterclaimants in that action. As the RESTATEMENT (SECOND) OF JUDGMENTS, *supra*, § 39, Comment c, explains:

> To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review.... It is sufficient that the choices were in the hands of counsel responsible to the controlling person; moreover, the requisite opportunity may exist even when it is shared with other persons.

It is quite clear that as an attorney in both actions, regardless of his personal stake in either of them, Hewes did have at least some share in exercising the effective choice of legal theories and proofs to be advanced in behalf of his clients, as well as at least partial control over any decision to appeal. As the Supreme Court has repeatedly observed, "[O]ne who prosecutes or defends a suit in the name of another to establish or protect his own right, or who

assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record." *Montana v. United States, supra,* 440 U.S. at 154, 99 S.Ct. at 974 *quoting Souffront v. Compagnie des Sucreries,* 217 U.S. 475, 486–87, 30 S.Ct. 608, 612, 54 L.Ed. 846 (1910); *see also Schnell v. Peter Eckrich & Sons,* 365 U.S. 260, 262 n. 4, 81 S.Ct. 557, 559 n. 4, 5 L.Ed.2d 546 (1961); *cf. Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 111, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969). Thus, to the extent Hewes undertook in Maryland to represent interests substantially the same as his own, his participation in the current matter as a party must be barred by the rule of claim preclusion just as if he had been a named party in Maryland.

■ Moreover, even if Hewes' activities as an attorney in the Maryland case were not determinative, his interest in the case, as well as Smith's, were fully represented by the litigation of the identical claim in Maryland. Appellant Augmentation, as a defendant and counterclaimant, and in its capacity as the Herring Landing successor general partner in the Maryland suit, interposed this claim unsuccessfully on behalf of the partnership. While the Maryland Court of Special Appeals questioned the procedural propriety of this representation, because of the failure of appellees therein, Jenkins and Esham, to challenge this procedure, the court proceeded "to treat the claims of the partnership as if they had been presented in a more appropriate manner." *Ocean Holiday Investments, Inc. v. Esham,* No. 1019, slip op. at 11 (Md.Ct. Spec.App. Apr. 5, 1988) (per curiam). The claim is thus *res judicata* and the interests of the partnership—and thus those of the partners—were fully represented in the action.

■ Finally, appellants contend that appellant Smith could not be in privity with the litigants in the Maryland action, be-

---

8. *Since* the term "claim" refers to the underlying transaction, events, or operative facts, rather than the rights claimed on the basis of those facts, *see Clark v. Taylor, supra,* 163 F.2d at 942–43; *Mathews v. New York Racing Ass'n,*

*Inc., supra,* 193 F.Supp. at 294, we need not concern ourselves with any possible legal distinction between appellant Augmentation's rights as a limited partner and those it may have had as a general partner.

cause at the time of its filing, trial, and judgment, he was no longer a partner in Herring Landing. Nevertheless, Smith attempts, on the basis of his partnership in Herring Landing at the time of the alleged fraudulent activities, to assert a claim identical to that unsuccessfully asserted in Maryland when he was no longer a limited partner. However, we find it unnecessary even to reach whether Smith was privy to the litigation to dispose of this argument: if his interest continued to exist at the time of the Maryland action, it was identical with that of the Herring Landing partners and was therefore represented by the partners who interposed the counterclaim in Maryland. If his interest no longer continued at that time, it no longer exists today. In short, if at the time of the Maryland action, Smith was "in" the partnership, he is bound; if not, he has no interest to defend. Thus, Smith is either barred from proceeding before this court with the claim on appeal, or lacks standing to do so.

### B. *Collateral Estoppel, or Issue Preclusion*

■ Even if the claim on appeal had not been barred by the principle of claim preclusion, we are satisfied that relitigation of the particular issues of this case would be blocked by issue preclusion. Under this doctrine,

> a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897); *see also Henderson, supra,* 439 A.2d at 485; *Habib, supra,* 286 A.2d at 855–56. In order for issue preclusion to apply, the issue in the new case must be one that was actually litigated and decided in the prior case, by a final and valid disposition on the merits, after a full and fair opportunity for litigation by the same parties or their privies, where the issue was necessarily decided in disposing of the first action, and not mere dictum. WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: *Jurisdiction, supra* note 3, § 4416. Regardless of the identity or difference between the underlying claims, issue preclusion operates to bar relitigation of identical issues actually decided between the parties or their privies. *Jackson v. District of Columbia,* 412 A.2d 948, 953–54 (D.C.1980).

As we have already determined, all of the parties to this action are identical to, or in privity with, the counterclaimants in the Maryland suit. Moreover, the central issues of fact and law in this appeal, whether or not the $300,000 purchase of real property by appellee Jenkins was executed before the formation of the Herring Landing partnership, and if so, whether he had any fiduciary duties to the as yet nonexistent partnership at that time, were actually put in issue and necessarily decided in appellees' favor by the Maryland court. This decision was final, valid on the merits, necessary to the outcome, and made only after all interested parties had a full and fair opportunity to litigate and appeal the matter. Smith's nonparticipation in that suit does not negate the fact that he was in privity with parties who actually represented his interests (or otherwise lacks an interest to litigate).

The issues precluded by virtue of the Maryland litigation comprise the crux of the current appeal. Compelled as we are to recognize and heed the Maryland judgment, we must conclude that appellee Jenkins purchased the West Ocean City realty for $300,000 before the formation of the Herring Landing partnership, and at that time bore no fiduciary duties to the partnership. Accordingly, there was no breach, fraud, or misrepresentation in appellees' conduct of the matter. This is, of course, the entire claim in dispute before us. Since these issues of fact and law were already conclusively decided, the Su-

perior Court properly dismissed the action on appellees' motion.

### III

Because we conclude that relitigation of the claim on appeal is barred by the doctrine of claim preclusion, and rehearing of the relevant issues of law and fact is blocked by the principle of issue preclusion, we affirm the judgment of the trial court.

*Affirmed.*