Carl D. KINSKY, Appellant,

v.

**154 LAND COMPANY, LLC, Respondent.**

No. ED 96854.

Missouri Court of Appeals, Eastern District.

May 15, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2012.

Carl D. Kinsky, French Village, MO, for appellant.

Robert L. Duckels, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

## Introduction

Carl D. Kinsky appeals the trial court's grant of summary judgment in favor of 154 Land Company (154) both on the merits and on the basis of res judicata and collateral estoppel. We affirm.

## Background

This lawsuit stems from the following facts. Areaco was the original owner and developer of Rocky Ridge Ranch, now Grayhawk Subdivision (Grayhawk). On April 12, 1966, Areaco executed a governing agreement (Agreement), which was to last for a period of 20 years, allowing extensions by additional terms of 20 years. The Agreement provided that it could "be modified and amended at any time by a suitable instrument executed by the Corporation and two-thirds (2/3) of the then owners of land in [Grayhawk]." The Agreement defined the phrase "then owners," stating, "for the purpose of arriving at the total number of owners of land therein, each lot shall be considered as having one owner." In 1986, the Agreement was extended for another 20 years. In 2005, Areaco sold its interest in Grayhawk to 154. Likewise, Rocky Ridge Ranch Property Owners' Association (POA) transferred its interests to the 154 Homeowners' Association.

The Agreement was scheduled to expire in April 2006. At that time, Grayhawk was comprised of 3,490 lots. 154 prepared an Amended and Restated Restriction Agreement (Amended Agreement), which it circulated to the property owners, along with a ballot to approve or reject the same. 154 owned 2,632 lots, and voted in favor of the Amended Agreement a corresponding 2,632 times. 82 additional owners holding 145 lots also voted in favor. 80 owners holding 118 lots voted against. 384 owners holding 595 lots abstained. 154 filed the Amended Agreement with the Recorder of Deeds for Ste. Genevieve County, Missouri, along with a "Certification Regarding Vote" that described how the voting was conducted and stated, "the owners of 2,781 of the 3,490 current lot[s] (or 80% of the current lot owners)" voted in favor of the Amended Agreement.

Appellant Carl D. Kinsky (Kinsky) was involved in the prior lawsuits as follows. In 2005, Kinsky represented Glenn Manion, a member of the POA, in his petition for declaratory judgment against the 154 Homeowners' Association and the president of the POA challenging as void the

transfer of interest between the POA and the 154 Homeowners' Association (*Manion* litigation). Manion withdrew his suit on December 1, 2005.

That same day, December 1, 2005, Kinsky filed on behalf of Melvin Jackson (Jackson), a lot owner at Grayhawk and member of the POA, an action for declaratory judgment against the POA and 154 Homeowners' Association (*Jackson* litigation). As amended, the petition also sought to have the Amended Agreement declared null and void, challenging the construction of the two-thirds voting requirements. Kinsky argued on Jackson's behalf that the original agreement should be construed to provide that each property owner should only receive one vote, no matter how many lots they owned.

The trial court in the *Jackson* litigation granted partial summary judgment to 154, finding that the Amended Agreement was "properly executed and recorded ... [and] was properly voted upon and received the necessary number of votes for approval." The trial court denominated its ruling a final judgment in accordance with Rule 74.01(b).

On May 26, 2009, this Court affirmed the trial court's grant of partial summary judgment. *Jackson v. Rocky Ridge Ranch Prop. Owners' Ass'n.*, 283 S.W.3d 311 (Mo. App. E.D.2009). Kinsky also represented Jackson in his appeal. *Id.*

On June 1, 2009, Kinsky acquired a property interest in a lot at Grayhawk for $10 from Glenn Manion's widow. On August 25, 2009, acting pro se, Kinsky filed a petition against 154 [1] for declaratory judgment contending that his lot was not subject to the Amended Agreement. His later motion for summary judgment as-serted that the Amended Agreement was void because it failed to satisfy the original Agreement's requirement that any amendment be executed by two-thirds of the then owners, in that the original Agreement should be properly interpreted as allowing each land owner one vote, regardless of the number of lots owned. 154 also moved for summary judgment, arguing, inter alia, res judicata and collateral estoppel. 154's motion asserted that Kinsky's lawsuit raised the same claim as the prior *Jackson* litigation, and that although Kinsky was not a direct party to the *Jackson* litigation, he was in control of that lawsuit, thus making him a party in privity. After a hearing, the trial court granted 154's motion for summary judgment both on the merits, finding that "to the extent an owner owns multiple lots, that owner is afforded one vote for each lot owned," and on the basis of res judicata and collateral estoppel. The trial court denied Kinsky's motion for summary judgment. This appeal follows.

*Standard of Review*

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Cardinal Partners, L.L.C. v. Desco Inv. Co.*, 301 S.W.3d 104, 108 (Mo.App. E.D. 2010). When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record.

---

1. Neither party distinguishes between 154 Land Company and 154 Homeowners' Association. Following the lead of the parties, we treat these entities as the same for purposes of this appeal.

*Id.* at 108–09. Where the record shows two plausible but contradictory accounts of the necessary facts, there exists a genuine issue of material fact, making summary judgment inappropriate. *Ruppel v. City of Valley Park,* 318 S.W.3d 179, 184 (Mo.App. E.D.2010).

### Discussion

In his first two points on appeal, Kinsky argues that the trial court erred in granting summary judgment to 154 on the bases of res judicata and collateral estoppel, because Kinsky's alleged control over the *Jackson* litigation did not establish that he was a party in privity, and because there existed a genuine issue of material fact whether Kinsky controlled the *Jackson* litigation. We address both points together, and we disagree.

■ The trial court granted summary judgment, in part, on the related doctrines of both res judicata and collateral estoppel. Res judicata, or claim preclusion, bars the same parties or their privities from relitigating the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim stemming from the same set of facts that should have been raised in the first suit. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 715–16 (Mo. banc 2008) (citation omitted); *Creative Walking, Inc. v. Am. States Ins. Co.,* 25 S.W.3d 682, 686 (Mo.App. E.D.2000).

■ Likewise, under collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving the same parties or privities. *San Remo Hotel v. City & County of San Francisco,* 545 U.S. 323, 336 n. 16, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005); *Allen,* 449 U.S. at 94, 101 S.Ct. 411; *Shahan v. Shahan,* 988 S.W.2d 529, 532–33 (Mo. banc 1999). Res judicata is claim specific and addresses the situation where a claim should have been raised but was not, while collateral estoppel is specific to issues of law or fact that have already been litigated. The purpose of both res judicata and collateral estoppel is to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (citation omitted).

■ The United States Supreme Court has stated that preclusion of non-parties who control the earlier litigation "falls under the rubric of collateral estoppel rather than res judicata." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Accordingly, we will focus our analysis on collateral estoppel.[2] For collateral estoppel to apply, (1) the issue decided in the first action must be identical to the issue in the second; (2) the prior litigation must have resulted in a judgment on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication; and (4) the party to the prior adjudication must have had a full and fair opportunity to litigate the issue in the prior suit. *Shahan,* 988 S.W.2d at 532–33.

**2.** Nevertheless, both theories would apply here. The court in *Montana v. United States* notes that, unlike res judicata, collateral estoppel does not presume identical causes of action, as collateral estoppel deals with issue preclusion. *Montana,* 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Here, however, because the cause of action asserted in both cases is identical, the distinction is irrelevant.

There is no question that the issues in the *Jackson* litigation and the present litigation are identical. The trial court in *Jackson* ruled that each owner receive one vote for each lot owned. Kinsky concedes that his lawsuit is based on the same legal theory raised in the *Jackson* litigation, and both lawsuits stemmed from the same facts. Likewise, there is no challenge either that 154 was a defendant in both actions, or that both actions resulted in a final judgment on the merits. *Id.*

The contested issue here is whether, under these circumstances, Kinsky was a party in privity for purposes of collateral estoppel. We find that he was. While Kinsky was not a party in the *Jackson* litigation, he was Jackson's attorney. Privity exists where the party in the second case has interests that are so closely aligned to the party in the earlier litigation that the non-party can be fairly said to have had his or her day in court. *James v. Paul*, 49 S.W.3d 678, 683 (Mo. banc 2001). In addition, the Restatement (Second) of Judgments provides that "[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." Restatement (Second) of Judgments § 39 (1982). The qualifying element is control, not merely a proprietary or financial interest in the outcome of the litigation. *Id.* at cmt. a.

The United States Supreme Court has adopted the Restatement's theory of privity through control in the context of federal common law, agreeing that a nonparty is bound by the first judgment if he or she assumed control over the litigation in which that judgment was entered. *Taylor*, 553 U.S. at 894, 128 S.Ct. 2161. The Court specifically noted that, "[b]ecause such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation." *Id.* (citing Restatement (Second) of Judgments § 39 cmt. a (1982)). Missouri law has not yet addressed Section 39 of the Restatement, but we find the reasoning of the Supreme Court persuasive, and we adopt the Restatement's theory of privity through control, as set forth in Section 39 of the Restatement (Second) of Judgments.

Kinsky argues existing Missouri law is inconsistent with Section 39, but we disagree. Kinsky urges this Court to rely on *Fischer v. Fischer*, 34 S.W.3d 263 (Mo. App. W.D.2000), but we find this case distinguishable. *Fischer* contained no discussion of control, the issue we are grappling with here. *Fischer* involved a suit brought by a child through his mother as next friend. The Western District held that because the child was not a party to the first suit between the mother and father, his interests had not been represented in the first suit, and thus his claim in the second suit was not barred by collateral estoppel. Because the party to be estopped in the second suit was a child, he could not have controlled the first suit, and thus any discussion of whether control can create privity between parties would not have been relevant in that case. *Fischer* is not persuasive.

Kinsky further notes that this Court has previously rejected a section of the Restatement (Second) of Judgments, *Wendt v. Gen. Accidental Ins. Co.*, 895 S.W.2d 210, 214 (Mo.App. E.D.1995) (rejecting Restatement (Second) of Judgments § 48 (1982) as inconsistent with existing Missouri Supreme Court precedent), and we should thus not feel constrained to follow Section 39. Our decision in *Wendt* has no application to the case at bar, and we do not find *Wendt* persuasive.

 Kinsky next challenges whether the actions he undertook as Jackson's attorney constituted "control" over that action. The Restatement defines having control over litigation as "requir[ing] that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action," and having "control over the opportunity to obtain review." Restatement (Second) of Judgments § 39 cmt. c (1982). Whether a person's involvement in the action is extensive enough to constitute control is a question of fact and depends on the circumstances of each individual case. *Id.* Moreover, a person's motivation in assuming control over a lawsuit helps to determine whether collateral estoppel applies. For example, when the party assumes control in order to protect a similar interest— in essence "making the litigation a test case of the issues with which he concerned"—then we can assume a substantial equivalence in interest between the parties. *Id.* at cmt. a.

The issue of whether a non-party attorney is in privity with the party that the attorney represented has been addressed by courts in other jurisdictions. In *Smith v. Jenkins*, as relevant, Alexander Hewes was the non-party/lead attorney in the first lawsuit and the pro se plaintiff/lead attorney in the second lawsuit. *Smith*, 562 A.2d 610, 615–16 (D.C.App.1989). The D.C. Court of Appeals held that as lead attorney in the first lawsuit, Hewes was in privity with the parties he had previously represented and thus was barred under collateral estoppel from bringing the second action on the same issues. The court stated that "control of the [first] litigation is the inescapable consequence of his legal representation of the defendant-counterclaimants in that action." *Id.* at 616. The court further held that "[i]t is quite clear that as an attorney in both actions, regardless of his personal stake in either of them,

Hewes did have at least some share in exercising the effective choice of legal theories and proofs to be advanced in behalf of his clients, as well as at least partial control over any decision to appeal." *Id.*

Likewise, in *Phelps v. Hamilton,* the U.S. Court of Appeals for the Tenth Circuit addressed the question of whether Margie Phelps, who was not a party to an earlier related lawsuit but was one of the listed attorneys for the plaintiffs, was in privity with those plaintiffs for the purposes of res judicata and collateral estoppel in her present suit. *Phelps*, 122 F.3d 1309, 1319 (10th Cir.1997). The *Phelps* court found that she was in privity, because as an attorney on the case, she controlled the litigation. Specifically, the court noted that Phelps, "as listed attorney for each of the plaintiffs, not only had input into the legal theories and arguments advanced, but could be said to be directly responsible, along with co-counsel, for 'controlling' the entire course of the state court proceedings." *Id.*

Kinsky would have us rely on *Rucker v. Schmidt* for the proposition that privity is established not by asking whether the attorney for a party has control over the case, but by asking whether the attorney is "so identified in interest with [the party] that they represent the same legal right." *Rucker*, 794 N.W.2d 114, 118 (Minn.2011). In *Rucker,* inter alia, attorney Steven B. Schmidt was sued personally for his actions in representing his client. The court declined to find privity between Schmidt and his client, holding that although attorneys have a common interest with their clients in obtaining a favorable outcome, this common interest is insufficient to create privity between the parties. *Id.* at 119. The court recognized, though, that at least seven other jurisdictions have adopted a per se rule that when an attorney is sued based upon his or her actions in represent-

ing a client, the attorney and client are in privity. *Id.* at 123. However, the *Rucker* court, based on Minnesota's "long-established test for determining whether privity exists," rejected the per se rule, and found that privity requires a "mutuality of legal interest in the outcome of the . . . action." *Id.* at 119, 121.

Missouri does not have a "long-established test for determining whether privity exists" between parties and their attorneys, and we do not find the reasoning in *Rucker* persuasive in the current case. Further, we adopt the per se rule of privity, as we find the reasoning of the *Smith* and *Phelps* courts persuasive, and we agree that control is the "inescapable consequence" of legal representation. *Smith*, 562 A.2d at 616. Kinsky here admits that, as counsel in the *Jackson* litigation, he made most of the procedural decisions and decided what evidence to present. Likewise, as counsel he would have determined which legal theories and arguments to present in the *Jackson* litigation, and would have had substantial input in the decision to appeal and the arguments presented therein. *See Phelps,* 122 F.3d at 1319 (finding privity through control because non-party/attorney had input into the legal theories and arguments advanced); *Smith,* 562 A.2d at 616 (same; in addition, finding privity based on at least partial control over any decision to appeal). Applying control as a basis for privity, we find that privity exists between the parties and thus Kinsky is bound by the trial court's judgment in *Jackson, Taylor,* 553 U.S. at 894, 128 S.Ct. 2161.

■ Finally, Kinsky contends that because he disputed whether he had control over the *Jackson* litigation, which is a material fact, the trial court erred in granting summary judgment. Kinsky's bare asser-

tion that he did not control the *Jackson* litigation is insufficient in itself to create a genuine dispute of material facts sufficient to preclude summary judgment. "Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382. Here, even viewing the record and inferences in a light most favorable to Kinsky, there is only one plausible account of the necessary facts, and Kinsky's assertions to the contrary are merely argumentative. Moreover, under cases such as *Smith* and *Phelps,* the simple determination of whether a non-party was counsel in the first suit, as Kinsky was here, is sufficient to establish control over that litigation. Kinsky here admits that he was counsel to Jackson, which is sufficient to establish that he was in privity with the *Jackson* litigation.

Because we conclude that relitigation of the issue decided in *Jackson* is barred by collateral estoppel, we affirm the judgment of the trial court. Accordingly, we decline to address Kinsky's third point on appeal challenging the merits of the trial court's decision.

Points denied.

### Conclusion

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN and ROBERT M. CLAYTON, III, JJ., concur.