*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-462

MA SHUN BELL, APPELLANT,

V.

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8461-19)

(Hon. Yvonne M. Williams, Trial Judge)

(Argued February 16, 2022                    Decided November 23, 2022)

*Radi Dennis* for appellant.

*David M. Ross*, with whom *Kevin P. Farrell* was on the brief, for appellee.

Before MCLEESE and DEAHL, *Associate Judges*, and MCLEAN, *Associate Judge, Superior Court of the District of Columbia*.[*]

MCLEAN, *Associate Judge*: On January 9, 2020, Ms. Bell filed her First Amended Class and Individual Claims for Damages and Incidental Relief, individually and on behalf of those similarly situated, against Weinstock, Friedman

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a).

& Friedman, P.A. ("appellee").[1] The complaint alleges violations of the District of Columbia Automobile Financing and Repossession Act ("AFRA"), violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), violations of the District of Columbia Debt Collection Law ("DCL"), and abuse of process. On April 6, 2020, the Superior Court granted appellee's Motion to Dismiss based on *res judicata*/claim preclusion. This appeal followed. For the reasons below, we reverse the Superior Court ruling and remand.

## I. Background.

### A. Superior Court Small Claims Matter

In 2012, Ms. Bell purchased a vehicle through a Retail Installment Sales Contract ("RISC"). At some point in 2016, Ms. Bell did not make payments on the vehicle, and it was repossessed in November or December 2016. On March 29, 2017, First Investors Servicing Corporation ("FISC"), by and through its counsel, appellee Weinstock, Friedman & Friedman, P.A., filed suit in the Small Claims Branch of the District of Columbia Superior Court seeking a deficiency amount of $8,271.40 (Docket No. 2017 SC3 001636). On May 17, 2017, Ms. Bell signed a

---

[1] Weinstock, Friedman & Friedman, P.A. is now named Friedman, Framme & Thrush, P.A.

one-page settlement agreement with FISC in which Ms. Bell agreed to pay FISC a total of $8,271.41 in set monthly installments. The agreement further provided that FISC would dismiss the matter with prejudice if Ms. Bell timely made all payments. However, if Ms. Bell defaulted on the agreement, FISC was entitled to apply for entry of default judgment for the outstanding balance. Ms. Bell eventually defaulted on the agreement, and, on August 8, 2018, the Superior Court entered a judgment in favor of FISC for $6,822.97. After FISC sought enforcement through wage garnishment, Ms. Bell filed a motion to set aside the judgment on December 26, 2018, and a motion for judicial review on February 28, 2019; the Superior Court denied the motions by orders dated February 21, 2019, and April 1, 2019, respectively. On November 7, 2019, FISC filed a Praecipe of Satisfaction that dismissed the matter with prejudice as "paid and satisfied in full."

**B. Related Superior Court Civil Action (2019 CA 08266 B)**

Ms. Bell filed a separate lawsuit against FISC on January 9, 2020, individually and on behalf of those similarly situated, for class and individual claims for violations of AFRA; class and individual claims for violations of CPPA; an individual claim for violations of DCL; and an individual claim for abuse of process. The trial court dismissed Ms. Bell's claims based on claim preclusion. *See* March

16, 2020, order. Ms. Bell appealed the dismissal. In *Bell v. First Investors Servicing Corp.* ("*Bell I*"), this court affirmed the dismissal of Ms. Bell's third, fourth, and fifth claims, reversed the dismissal of her first and second causes of action, and remanded for further proceedings. *Bell I*, 256 A.3d 246, 259 (D.C. 2021). This court found that the first and second causes of action were partially precluded because success on the claims that rested on allegations that "in essence assert that FISC was not entitled to collect the deficiency amount reflected in the 2018 judgment, and thus challenge FISC's right to the funds the court awarded . . . would nullify the judgment in favor of FISC." *Id.* at 256.

On November 12, 2021, after FISC filed a motion for judgment on the pleadings, the trial court dismissed the remainder of Ms. Bell's claims for failure to assert a claim upon which relief could be granted. *See* November 12, 2021, order. Ms. Bell appealed that order on December 3, 2021. We recently reversed that order and remanded for further proceedings. *Bell v. First Investors Servicing Corp.*, Mem. Op. & J. (D.C. Nov. 9, 2022).

### C. Superior Court Civil Action on Appeal (2019 CA 08461 B)

Ms. Bell filed her complaint in this matter with claims regarding AFRA violations, CPPA violations, DCL violations, and abuse of process on January 9,

2020. Appellee filed a Motion to Dismiss Plaintiff's Amended Complaint on January 22, 2020. Ms. Bell filed an Opposition on February 17, 2020, and appellee filed a Reply in Support on February 27, 2020. On April 6, 2020, the Superior Court granted appellee's Motion to Dismiss based on *res judicata* (claim preclusion) finding that (1) "the facts alleged in this matter are based on the common nucleus of facts brought forward in the Small Claims action which was fully adjudicated on the merits, and that Ms. Bell could have brought these claims in the earlier proceeding," and (2) that appellee and FISC are in privity because "[t]he actions she alleges that [appellee] took relate directly to actions [appellee] did in its role of attorney-agent to FISC." April 6, 2020, order at 7-8. The trial court also found that Ms. Bell's claims were barred because they could have been brought as permissive counterclaims in the action against FISC. *See id.* at 7.

Ms. Bell filed an Opposed Motion for Reconsideration on May 5, 2020, to which appellee filed an Opposition on May 18, 2020. On July 2, 2020, the Superior Court denied Ms. Bell's motion. *See* July 2, 2020, order at 3 ("Plaintiff attempts to relitigate her unsuccessful positions without either demonstrating manifest error or injustice or presenting new or changed circumstances").

Ms. Bell filed this appeal on July 24, 2020.

## D. Arguments on Appeal[2]

In Appellant's Opening Brief, Ms. Bell argues that the trial court erred in dismissing her complaint based on *res judicata* because (1) the trial court failed to apply the nullification/impairment analysis described in *Smith v. Greenway Apartments, LP*, 150 A.3d 1265 (D.C. 2016); (2) Ms. Bell's success on these claims would not nullify the small claims judgment; and (3) there is no identity of parties as appellee was not party to the small claims action nor is appellee in privity with FISC for the small claims action. In discussing policy considerations, Ms. Bell further argues that the application of *res judicata* in these circumstances (1) violates due process because it deprives her of a full and fair opportunity to pursue her claims against appellee and (2) weakens state and federal consumer protection and debt collection laws.

Appellee argues that the trial court correctly dismissed Ms. Bell's claims based on *res judicata* because (1) her claims are precluded under the nullification/impairment test since success on the claims would threaten FISC's

---

[2] On August 12, 2021, this court issued its opinion in *Bell I*. That opinion moots the parties' arguments in this matter related to the categorization of small claims counterclaims as permissive or compulsory and the proper claim preclusion test for permissive counterclaims. *See Bell I*, 256 A.3d at 253-56. This opinion addresses only issues still in controversy.

judgment and (2) appellee is in privity with FISC. Appellee further argues that Ms. Bell's status as a pro se litigant in the small claims action is not a basis to fail to apply *res judicata*.

The court will analyze these arguments in detail below to the extent they relate to the trial court's decision.[3]

---

[3] Appellee raises two Super. Ct. Civ. R. 12(b)(6) arguments as alternative bases for upholding the trial court's dismissal of Ms. Bell's claims. First, appellee argues that Ms. Bell's settlement agreement with FISC bars her current claims. Second, appellee argues that Ms. Bell failed to state a cognizable claim because Maryland law, not District law, applies to her claims by virtue of the choice of law clause in the RISC. We decline to address the merits of these arguments as the trial court's opinion did not do so, but we do note that (1) appellee failed to present any argument or reasoning as to why they may claim the "benefits" of any terms of the settlement agreement or the RISC given that they are not parties, successors in interest, or assignees to either and (2) even if appellee was protected by the settlement agreement, Ms. Bell cannot be deemed to have waived causes of action through a settlement agreement under AFRA, CPPA, and DCL to the extent that the causes of action do not nullify the small claims judgment. *See Bell I*, 256 A.3d at 256 n.12. Each party also argued that the other raised untimely arguments for the first time on appeal. These arguments are without merit as they are about citations to law (as opposed to newly introduced arguments).

## II. Analysis.

## A. Res Judicata

This court "reviews *de novo* the application of the doctrine of *res judicata*." *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010) (citation omitted). *Res judicata* (claim preclusion) dictates that "a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies." *Patton v. Klein*, 746 A.2d 866, 869 (D.C. 1999); *see also Carr v. Rose*, 701 A.2d 1065, 1070 (D.C. 1997). "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Patton*, 746 A.2d at 870 (citation omitted).

Appellee contends that they are in privity with FISC because—as attorneys for FISC—they controlled the small claims action, and the current claims are based on actions they took as agents of FISC during the small claims action. The trial court found that appellee was in privity with FISC because attorneys are agents for their clients, "agents and principals are in privity for *res judicata* purposes if the prior action concerned a matter within the agency," and the actions appellee took were

within the scope of their agency.[4]   April 6, 2020, order at 8 (internal citations omitted).

This court has previously issued opinions that support the position that an attorney may act as an agent of a client. *See, e.g.*, *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 583-84 (D.C. 2015) ("An agent owes [his] principal a fiduciary duty and a duty of loyalty, and like other agents, lawyers owe their clients a duty of loyalty and a duty of care." (internal quotation marks omitted)).  That said, "[a]gents and principals. . . are not ordinarily in privity with each other." *D.C. Redevelopment Land Agency v. Dowdey*, 618 A.2d 153, 163 (D.C. 1992) (citation omitted).  "[A] decision on the merits in an action against the principal is *res judicata* in a later action against the agent only 'if the prior action concerned a matter within the agency.'" *Major v. Inner City Prop. Mgmt.*, 653 A.2d 379, 381 (D.C. 1995) (citing *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 637 F. Supp. 1333, 1341 (N.D. Ill. 1986).  "Where privity exists and the issue to be tried is identical as against both principal

---

[4] It is uncontested that there was a final judgment on the merits in, and appellee was not party to, the small claims action.  This court previously determined counterclaims that "assert that FISC was not entitled to collect the deficiency amount reflected in the [small claims] judgment, and thus challenge FISC's right to the funds the court awarded" are precluded by the nullification/impairment exception. *Bell I*, 256 A.3d at 256.  As such, we do not address these elements of the *res judicata* analysis.

and agent, the doctrine of res judicata applies to bar subsequent litigation." *Dowdey,* 618 A.2d at 164.

This court has previously found an attorney in privity with a client for purposes of *res judicata* where he was a limited partner with the client in the business at issue in the litigation. *See Smith v. Jenkins*, 562 A.2d 610, 616 (D.C. 1989).[5] But this court has not directly addressed in what context an attorney-client relationship creates privity for purposes of *res judicata*.[6] Courts in many other jurisdictions have considered this issue and their decisions generally fall into two categories. First, courts that have reasoned that to find privity between an attorney and client there must be a mutuality of legal interests, which does not exist in every attorney-client relationship. *See, e.g.*, *Rucker v. Schmidt*, 794 N.W.2d 114, 119 (Minn. 2011)

---

[5] *Smith* also analyzed privity based on a control analysis, 562 A.2d at 616, but this court will not address that analysis as it was not a basis for the trial court's decision.

[6] Appellee argues that this issue was addressed in *Quick v. EDUCAP, Inc.*, 318 F. Supp. 3d 121 (D.D.C. 2018). Although the federal district court in that case applied District law to hold that a suit against attorneys was barred by *res judicata*, the court did not analyze privity between the attorneys and client or distinguish between them in the *res judicata* analysis, seemingly because no party disputed privity. *See id.* at 139 ("When evaluating whether claim preclusion operates to bar a subsequent lawsuit, courts look to whether the prior litigation '(1) involv[ed] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'. . . The parties here dispute only the first and third elements.") (citation omitted).

(holding that a "common objective" in obtaining a "favorable outcome" was insufficient to find privity where no mutuality of legal interest existed); *Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 714-15 (Va. 2019) (agreeing that "an attorney does not share the same legal interest as his or her client merely by virtue of his or her representation of that client" because that representation does not create "a mutual or successive relationship to the same rights of property"); *Branning v. Morgan Guar. Tr. Co.*, 739 F. Supp. 1056, 1063-64 (D.S.C. 1990) (upholding application of *res judicata* to client, but not as to attorneys because there was no evidence that they had "any mutual or successive relationship in the same rights of property with" the client); *Cont'l Sav. Ass'n v. Collins*, 814 S.W.2d 829, 832 (Tex. App. 1991) ("It would be a surprise to this court and to the lawyers of the state of Texas to learn that by virtue of mere representation a lawyer establishes privity with his client. As pointed out by [appellant], does the appellee, by virtue of his implied claim of privity, accept responsibility for the money judgment rendered"); *Weinberger v. Tucker*, 510 F.3d 486, 492-93 (4th Cir. 2007) (finding an attorney in privity with client not because of the attorney-client relationship but due to specific identity of interests); *Thrasher Buschmann & Voelkel, P.C. v. Adpoint, Inc.*, 24 N.E.3d 487, 496-98 (Ind. Ct. App. 2015) (requiring a "careful examination of the circumstances of each case" and finding that an award of attorney's fees was

insufficient to be the "something more" than an attorney-client relationship necessary to find privity).

The second category consists of courts that have found that an attorney-client relationship created privity with little to no analysis of the mutuality of legal interests. *See, e.g.*, *Jayel Corp. v. Cochran*, 234 S.W.3d 278, 284 (Ark. 2006) ("[T]he attorney-client relationship between the [client] and [lawyer] is sufficient to satisfy the privity requirement for purposes of *res judicata*."); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) ("The law firm defendants appear by virtue of their activities as representatives of Green and AT&T, also creating privity."); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of *res judicata*."); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988) (affirming dismissal of claims against attorney that were previously brought against his client because they "shared a significant relationship"); *Kinsky v. 154 Land Co., LLC*, 371 S.W.3d 108, 114-15 (Mo. Ct. App. 2012) (relying on a control analysis to determine that an attorney was in privity with a client). The underlying factual circumstances in this second category indicate that the attorney had at least some legal interest in the prior

proceeding, which may mean that the lack of analysis of mutual legal interest inadvertently led to a broader rule.[7]

We find the reasoning in the first category of cases persuasive and in line with the District's law on privity. *See, e.g.*, *Price v. Indep. Fed. Sav. Bank*, 110 A.3d 567, 571 (D.C. 2015) (evaluating whether the parties have "precisely the same legal right"); *Patton*, 746 A.2d at 870 (finding application of *res judicata* inappropriate where "no identity of parties"). Although attorneys may act as agents of their clients when they act in their role as counsel, the required mutuality of interests will not

---

[7] *See, e.g.*, *Jayel Corp.*, 234 S.W.3d at 282-83 (Attorney Cochran filed suit on behalf of his clients against Jayel Corporation for nuisance and trespass. Jayel filed a counterclaim that alleged that the notice of legal action was not justified. The parties executed a settlement agreement, and the matter was dismissed with prejudice. The agreement allowed Jayel to proceed against Cochran in her individual capacity, and Jayel did so. The claims were identical to the counterclaims in the first action); *Plotner*, 224 F.3d at 1164, 1166, 1175 (Appellant filed for bankruptcy and a reorganization plan was approved. Appellant then filed several subsequent suits alleging fraud and breach of fiduciary duty, which the bankruptcy court dismissed based on *res judicata* and the appellate court upheld); *Farmer City State Bank*, 808 F.2d at 1235-36 (Bank filed a complaint seeking foreclosure of Plaintiffs' mortgages and a judgment was entered against the Plaintiffs. Plaintiffs challenged the foreclosure and judgment on appeal, and the decision was affirmed. Plaintiffs subsequently filed a suit alleging RICO claims against twenty-nine defendants. The court noted that "[t]he [Plaintiffs'] allegations of fraud and forgery, if substantiated, would have been a complete defense to the foreclosure proceedings. [citation omitted] Having failed to raise those allegations before the state court, [Plaintiffs] cannot attack the state court judgments by subsequently filing RICO claims based on the same facts in federal court.").

exist in every circumstance. It is not sufficient that the actions taken by an attorney in a prior case were on behalf of a client or within the scope of their agency. Even in such circumstances, the interests of attorneys may not align with their clients' and attorneys do not have full control over litigation such that it may be automatically assumed that they had fully litigated their interests in an earlier representation of a client.[8]

For these reasons, we hold that for purposes of *res judicata*, a decision regarding whether appellee was in privity with FISC requires analyzing the mutuality of their legal interests. The trial court did not engage in that analysis.

## B. Permissive Counterclaims

Turning to the trial court's determination that the claims against appellee could and should have been brought during the small claims action, if the trial court determines it is necessary to re-evaluate that decision it should do so consistent with *Bell I*.

---

[8] Attorneys and clients have "the common objective" to obtain a "favorable outcome . . . [b]ut that level of common interest … is not the kind of estate, blood, or legal interest that would give rise to privity…" *Rucker*, 794 N.W.2d at 119.

## III. Conclusion.

Based on the foregoing, we reverse the dismissal of Ms. Bell's claims, and remand for further proceedings consistent with this opinion and with the benefit of the ruling in *Bell I*.  As in *Bell I*, we make no determination regarding whether Ms. Bell's claims may be dismissed on alternative grounds.

*So ordered.*